Argued and submitted August 10, affirmed October 24, 2012, petition for review denied March 28, 2013 (353 Or 428)

STATE ex rel OREGON PIPELINE COMPANY, LLC,
*Relator-Appellant,*

*v.*

CLATSOP COUNTY,
a political subdivision,
*Defendant-Respondent,*

*and*

COLUMBIA RIVERKEEPER
and The Northwest Property Rights Coalition,
*Intervenors-Respondents.*

Clatsop County Circuit Court
112101; A148770

288 P3d 1024

E. Michael Connors argued the cause for appellant. With him on the briefs was Hathaway Koback Connors LLP.

Harlan E. Jones argued the cause for respondent Clatsop County. With him on the brief was Jordan Ramis PC.

Brett VandenHeuvel argued the cause for respondents Columbia River Keeper and The Northwest Property Rights Coalition. With him on the brief was Lauren Golberg.

Before Armstrong, Presiding Judge, and Brewer, Judge, and Norby, Judge pro tempore.

BREWER, J.

**BREWER, J.**

Appellant Oregon Pipeline (Pipeline) appeals from a circuit court judgment dismissing its petition for a writ of mandamus, brought under ORS 215.429, in which it sought to compel respondent Clatsop County (the county) to approve Pipeline's application for a land use approval of a natural gas pipeline. The circuit court dismissed the petition for lack of jurisdiction, and we affirm.

The pertinent facts are procedural. Pipeline applied to the county for land use approval to construct a natural gas pipeline, pursuant to a review of a conditional use permit and a geologic hazard permit. Pipeline's application was deemed complete on February 16, 2010. On November 8, 2010, the county issued a written decision, including findings of fact, approving that application. A third party, Columbia Riverkeeper, appealed the county's decision to the Land Use Board of Appeals (LUBA). During the pendency of that appeal—in which Pipeline actively participated—the county, on January 13, 2011, sought permission from LUBA to withdraw its decision for reconsideration pursuant to ORS 197.830(13)(b). Pipeline objected.

On February 9, 2011, while LUBA was considering the county's request, the county held a public meeting in which Pipeline participated. At that meeting, a county representative indicated, among other things, that the county intended to issue proposed findings and conclusions on reconsideration by March 30, 2011. On February 17, 2011, LUBA allowed the county to withdraw the decision for reconsideration, rejecting Pipeline's objection and setting a deadline of April 13, 2011, for the county to complete the reconsideration process.

On March 4, 2011, Pipeline filed a petition for a writ of mandamus in which it asked the circuit court to compel the county to approve its land use application. Pipeline argued that, because the county had withdrawn its decision, the county had failed, for purposes of ORS 215.429, to take "final action" on the application within 150 days after the application was deemed complete. Thus, Pipeline asserted, it was entitled to a circuit court judgment compelling the county to approve the application.

ORS 215.429 provides, in pertinent part:

"(1)   Except when an applicant requests an extension under ORS 215.427, if the governing body of the county or its designee does not take *final action* on an application for a permit, limited land use decision or zone change within 120 days or 150 days, as appropriate, after the application is deemed complete, the applicant may file a petition for a writ of mandamus under ORS 34.130 in the circuit court of the county where the application was submitted to compel the governing body or its designee to issue the approval.

"(2)   The governing body shall retain jurisdiction to make a land use decision on the application until a petition for a writ of mandamus is filed. Upon filing a petition under ORS 34.130, jurisdiction for all decisions regarding the application, including settlement, shall be with the circuit court."

(Emphasis added.)

The county moved to dismiss the petition for lack of jurisdiction, arguing that, because its decision had been appealed to LUBA, that tribunal had exclusive jurisdiction over the matter, and the withdrawal and reconsideration process that ensued had not affected the finality of its original decision. The circuit court agreed with the county, explaining:

"In the present case, there is no indication Clatsop County did not make a final decision on November 8, 2010. Pipeline also acknowledges the county can withdraw its decision pursuant to ORS 187.830(13). Pipeline takes the position that since Clatsop County cannot at this time point to a 'final' decision, there is no final decision. As a result it is entitled to mandamus relief pursuant to ORS 215.429. The problem with that argument is that this court would have to ignore the specific legislation that allows Clatsop County and LUBA to follow the reconsideration process. This court would also have to disregard those statutes and appellate decisions which place the appeal process of land use decisions exclusively in LUBA's realm.

"By statute and Oregon Supreme Court decision, exclusive jurisdiction of Pipeline's land use application is still with LUBA. If the reconsideration process is being abused by Clatsop County or in violation of either state

statute or LUBA regulation, then LUBA is the only tribunal that can make a decision."

The circuit court entered a judgment dismissing Pipeline's petition; this appeal followed.[1]

The dispositive jurisdictional issue on appeal is whether, for purposes of ORS 215.429, the county took qualifying final action on Pipeline's application, despite the fact that it later withdrew its decision during the course of the appeal to LUBA. To resolve that issue, we consider the nature of the mandamus remedy that Pipeline sought in the context of the pertinent statutory framework for review of land use decisions.

In effect, ORS 215.429(1) operates "to ensure that local governing bodies issue a decision," by providing an applicant with a mandamus remedy if the local government fails to take final action within the applicable time limit. *Simon v. Board of Comm. of Marion Co.*, 91 Or App 487, 491, 755 P2d 741 (1988) (so holding with regard to *former* ORS 215.428, a statute substantially identical to ORS 215.429).[2] The mandamus remedy "is not designed to provide review of a local government's land use decisions," but, instead, provides "an incentive for timely governmental action, along with a remedial mechanism that results in an approval," subject to defenses that the local government must prove. *State ex rel Compass Corp. v. City of Lake Oswego*, 319 Or 537, 542, 544, 878 P2d 403 (1994) (construing ORS

---

[1] The reader may wonder what ultimately occurred on reconsideration before the county. Without elaborating in unhelpful detail, suffice it to say that the record shows that, in a separate peremptory mandamus proceeding, the Supreme Court entered an order on March 29, 2011, staying the county's "proceedings and decisions regarding [plaintiff's] application until" the circuit court adjudicated the mandamus proceeding at issue here. The parties have not edified us as to what, if any, further proceedings have occurred on reconsideration before the county after the trial court entered its judgment dismissing this action.

[2] *Former* ORS 215.428(7) provided:

"If the governing body of the county or its designate does not take final action on an application for a permit or zone change within 120 days after the application is deemed complete, the applicant may apply in the circuit court of the county where the application was filed for a writ of mandamus to compel the governing body or its designate to issue the approval. The writ shall be issued unless the governing body shows that the approval would violate a substantive provision of the county comprehensive plan or land use regulations as defined in ORS 197.015."

227.178(7), the analog to ORS 215.429 that applies to city governments).

When a local government makes a land use decision, the legislature has provided for exclusive review by LUBA. *See* ORS 197.825 (providing that LUBA "shall have exclusive jurisdiction to review any land use decision * * * of a local government"). LUBA's review authority is prescribed by ORS 197.830, which provides, in pertinent part:

"(1) Review of land use decisions or limited land use decisions under ORS 197.830 to 197.845 shall be commenced by filing a notice of intent to appeal with the Land Use Board of Appeals.

"* * * * *

"(13)(b) At any time subsequent to the filing of a notice of intent and prior to the date set for filing the record * * * the local government or state agency may withdraw its decision for purposes of reconsideration. If a local government or state agency withdraws an order for purposes of reconsideration, it shall, within such time as the board may allow, affirm, modify or reverse its decision. If the petitioner is dissatisfied with the local government or agency action after withdrawal for purposes of reconsideration, the petitioner may refile the notice of intent and the review shall proceed upon the revised order. An amended notice of intent shall not be required if the local government or state agency, on reconsideration, affirms the order or modifies the order with only minor changes."

The withdrawal and reconsideration process set out in ORS 197.830(13)(b) is, thus, an integral dimension of LUBA's review jurisdiction. The Supreme Court explained the relationship between the mandamus statutes and the LUBA review process in *Compass*:

"LUBA reviews a local government decision. The predicate for a mandamus proceeding under [the mandamus statutes] is the local government's failure to make a timely final decision on an application. Because the local government has failed to make a decision, the mandamus proceeding is not a process for 'review' of a local government's decision."

319 Or at 544. With that understanding of the statutory framework in mind, we return to the question whether the county's original decision constituted final action under ORS 215.429.

In the absence of a countervailing ordinance, a county takes "final action" under *former* ORS 215.428 "when the application is complete and the decision on it is made." *Bigej Enterprises v. Tillamook Co.*, 118 Or App 342, 346, 847 P2d 869, *rev den*, 317 Or 162 (1993).[3] Because the pertinent text of ORS 215.429 is practically identical to *former* ORS 215.428(7), we apply the test that we articulated in *Bigej* for determining whether a local government has taken "final action" under ORS 215.429. Here, the parties do not dispute that Pipeline's application was complete and that the county made a qualifying decision approving that application on November 8, 2010. Accordingly, under *Bigej*, we tentatively conclude that the county took "final action" on Pipeline's application on November 8, 2010.

Pipeline remonstrates that *Bigej* is distinguishable because, in that case, the county had not withdrawn its decision for reconsideration under ORS 197.830(13)(b). Relying on dictionary definitions of the term "final," Pipeline reasons that

"[b]y definition, *you cannot have two final actions.* Therefore, the county's withdrawal of the November 8th decision under ORS 197.830(13)(b) served to nullify and invalidate that decision. Since the November 8th decision is no longer valid, it cannot constitute 'final action' even under the rationale [of *Bigej*]."

(Emphasis added.) We disagree.

In *Simon*, the county had failed to meet the 120-day deadline set out in ORS 215.428(7), but nonetheless had taken final action on the petitioner's application before the petitioner filed a petition for a writ of mandamus. We agreed with the circuit court that it lacked jurisdiction and that LUBA had exclusive jurisdiction to review the county's decision:

---

[3] The county has not argued that it has adopted an ordinance setting out what qualifies as "final action."

"Construing ORS 215.428(7) to continue jurisdiction in the circuit court after a governing body has acted, even belatedly, would be inconsistent with the statutory scheme. The mandamus remedy is not subject to expedited review, and it makes little sense to review a decision through a slower process simply because the governing body failed to act more quickly. It also makes little sense to require a second tribunal to make a second initial decision. To provide an alternative channel of review would also defeat the legislature's obvious intent to funnel review of land use decisions through LUBA.

"The legislature has made clear that review by LUBA is the norm. The mandamus remedy is intended to effectuate LUBA's role, not undercut it. The evident purpose of ORS 215.428 is to ensure that local governing bodies issue a decision. Once the governing body acts, the purpose of ORS 215.428(7) has been met, and there is no reason for resort to the circuit court."

91 Or App at 491.

We relied on *Simon* in *Bigej*. There, the petitioners had argued that the county, which denied their application on May 1, had not taken final action within the 120-day deadline because the petitioner had not received written notice of that decision until May 3, two days after the deadline expired. Because we had held in *League of Oregon Women Voters v. Coos Co.*, 82 Or App 673, 792 P2d 588 (1986), that a county land use decision does not become final, for purposes of calculating the time within which a party may appeal to LUBA, until the party receives notice of the decision required by ORS 215.416(10), the petitioners in *Bigej* argued that the same inquiry was required for determining whether a decision constituted "final action" under the mandamus statute. After reciting the passage from *Simon* quoted above, we rejected that argument:

"Given that holding and reasoning, it would make no sense to extract a county land use decision from LUBA's jurisdiction, and to make the mandamus remedy available, by reading ORS 215.416(10) and ORS 215.428 in the way that plaintiffs urge. The county *has* made a decision that could have been appealed to LUBA. Plaintiff's effort to extend the holdings in *League of Women Voters* * * * and similar cases to shorten the time within which mandamus

relief becomes available would not achieve the symmetry they claim for it; rather, it would undermine the LUBA review process, and the access of the parties to that process, that those cases were designed to protect. We adhere to our holding that, in the absence of a county rule that defines when a decision is final under ORS 215.428, an action is 'final' when the application is complete and the decision on it is made."

*Bigej*, 118 Or App at 346 (emphasis in the original).

We adhered to our holdings in *Simon* and *Bigej* in *State ex rel Fraley v. Deschutes Co. Bd. of Comm.*, 151 Or App 201, 948 P2d 1249 (1997), *rev den*, 327 Or 305 (1998). There, the plaintiff had filed an application with the county, which, more than 120 days after the application had been deemed complete, had issued an approval. A party opposing the application appealed that decision to LUBA, which remanded the county's decision. The plaintiff sought judicial review, and this court affirmed. Following our decision, LUBA's remand to the county became final on December 22, 1995, and then, more than 120 days later, the county issued a decision with which the plaintiff was dissatisfied. The plaintiff again appealed to LUBA and, during the pendency of that appeal, filed a mandamus action under ORS 215.428(7). 151 Or App at 203-04.

Before this court, the plaintiff relied on *Compass* and argued that ORS 215.428(7) "creates a remedy—a judicially compelled approval—for a county's violation of the 120-day deadline contained in ORS 215.428(1)." *State ex rel Fraley*, 151 Or App at 206. According to the plaintiff, the right to such a remedy was not impaired by the county's decision, after the 120-day period had expired, to deny the application. The plaintiff's argument posited that mandamus relief may be obtained whether the action is brought before or after the county's decision, if that decision had not been made within the 120-day period.

We rejected that argument, relying on the Supreme Court's conclusion in *Murphy Citizens Advisory Com. v. Josephine County*, 325 Or 101, 107 n 6, 934 P2d 415 (1997), that:

"*Compass* holds that, *once the mandamus procedure at ORS 227.178(7) (or, in this case, the identical procedures at ORS 215.428(7)) has been invoked,* the local government's belated *denial* of the application at issue does not divest a circuit court of jurisdiction to enter a *peremptory* writ compelling *approval*."

(Emphases in original.) We concluded that the court's statement in *Murphy* "clearly implie[d] that a mandamus action under one of the two parallel statutes must have been brought *before* the belated local decision was made in order for the mandamus remedy to be available." *State ex rel Fraley*, 151 Or App at 208 (emphasis added).

It is apparent from the foregoing decisions that the mandamus remedy was meant to require local governments to take "final action" within a specified amount of time; when such action has been taken, the purpose of the mandamus statutes has been satisfied, and an aggrieved party must look to LUBA for further review. Correspondingly, no appellate decision to date has suggested that mandamus is available after a local government has taken "final action," and, particularly, after such a decision has been appealed to LUBA.

Pipeline argues that *Compass* compels a different conclusion. According to Pipeline, "*Compass* prohibits the court from interpreting the LUBA review statutes in a manner that modifies the obligations and/or rights under the mandamus statutes in the absence of express language to that effect." Pipeline reasons that,

"[a]lthough *Compass* did not address the specific jurisdictional issue presented in this case, the same rationale applies. ORS 197.830 governs the LUBA process exclusively and is separate and distinct from the mandamus statutes. The mere fact that ORS 197.830(13)(b) provides a time frame for withdrawal and reconsideration for purposes of LUBA's process does not create an ambiguity or imply that the legislature intended to exempt a local government from complying with the separate time restrictions under the mandamus statutes."

Pipeline's argument is not persuasive. In *Compass*, unlike in this case, the county did not take final action until *after* the plaintiff had filed a mandamus petition. *Id.* at 540.

The Supreme Court concluded that the county could not divest the circuit court of mandamus jurisdiction by taking final action denying the application while the plaintiff's petition was pending in the circuit court. *Id.* at 545. That was true because an applicant has a right under the mandamus statutes

> "not merely to an order that rules on the application, but to an order *compelling an approval.* If a city could avoid the mandamus remedy by denying the application on the eve of a court hearing, the incentive to make a timely decision within 120 days would disappear. Properly viewed, the approval action that the court compels through mandamus is not a second decision by the city; it is an action that the law requires as a consequence of the city's violation of the 120 day deadline. For that reason, a belated decision to deny an application does not render moot the applicant's claim to the mandamus remedy."

319 Or at 545-46 (emphasis in original). By contrast, here, the county did *not* fail to comply with the time limits prescribed by the mandamus statute. As explained, the county took "final action" within the 150-day time limit; the circumstance that LUBA review of that decision, including the withdrawal and reconsideration process set out in ORS 197.830(13)(b), was available thereafter does not alter that conclusion.

Pipeline protests that, because a dissatisfied petitioner may "re-file" its notice of intent to appeal after a local government has issued a revised order, it must follow that the withdrawal of an appealed decision divests LUBA of jurisdiction over the matter. Pipeline reasons that, if LUBA retained jurisdiction, "there would be no need to invoke LUBA's jurisdiction by filing a notice of intent to appeal." That argument presupposes that the refiling of a notice of intent has the effect of freshly "invoking" LUBA jurisdiction. However, that is not what the statute contemplates. Instead, ORS 197.830(13)(b) provides that, where a petitioner has "refile[d] the notice of intent," "*the review* shall proceed upon the revised order." (Emphasis added.) Thus, the statute does not require a new appeal after a local government issues a revised order on reconsideration, but, rather, envisions a continuation of the existing appeal. Moreover, the

withdrawal of an order does not divest LUBA of its ongoing supervisory role over the reconsideration process before the local government. In particular, the statute does not grant the local government an indefinite period of time within which to act. Instead, it must "affirm, modify, or reverse its decision" "within such time as [LUBA] may allow."

LUBA's administrative rule, OAR 661-010-0021, implements its jurisdictional authority under ORS 197.830(13)(b) over the withdrawal and reconsideration process. That rule provides, in pertinent part:

"(1)   If a local government or state agency, pursuant to ORS 197.830(13)(b), withdraws a decision for the purposes of reconsideration, it shall file a notice of withdrawal with the Board on or before the date the record is due. A copy of the decision on reconsideration shall be filed with the Board within 90 days after the filing of the notice of withdrawal or within such other time as the Board may allow.

"(2)   The filing of a notice of withdrawal under section (1) of this rule shall suspend proceedings on the appeal until a decision on reconsideration is filed with the Board, or the time designated therefor expires, unless otherwise ordered by the Board. *If no decision on reconsideration is filed within the time designated therefor, the Board shall issue an order restarting the appeal.*"

(Emphasis added.)

The rule imposes safeguards against indefinite delay or obstruction in the withdrawal and reconsideration process by authorizing LUBA to "restart[ ] the appeal" if the local government fails to file a decision on reconsideration within the time limit established by LUBA. The rule thus contemplates a monolithic process in which an appeal from an initial final decision remains in suspense during the reconsideration process. If the local government fails to issue a decision on reconsideration within 90 days or such other time as LUBA may allow, the appeal is to proceed. In short, LUBA is not divested of jurisdiction by the withdrawal and reconsideration process; under the terms of both the statute and its implementing rule, LUBA's exclusive jurisdiction over the appeal is continued until the reconsideration process ends and the appeal thereafter is resolved.

To recapitulate: Because the county took final action by issuing its decision on November 8, 2010, the circuit court lacked jurisdiction to adjudicate Pipeline's petition for a writ of mandamus in March 2011. When Pipeline filed that petition, the county's final decision had already been appealed to LUBA. Because the county's withdrawal of that decision for reconsideration did not divest LUBA of its exclusive jurisdiction over the appeal under ORS 197.825, the circuit court lacked jurisdiction to adjudicate Pipeline's petition for a writ of mandamus and properly granted the county's motion to dismiss.[4]

Affirmed.

---

[4] Pipeline also assigns error to the circuit court's award of attorney fees to the county, as a prevailing party, pursuant to ORS 34.210(2). Pipeline does not argue that the amount of the fee award was unreasonable or that the award was otherwise unsound. Because we conclude that the circuit court properly granted the county's motion to dismiss, we reject Pipeline's challenge to the attorney-fee award without further discussion.